Weatherspoon Fam. LLC v. Hatteras Inv. Partners, L.P., 2025 NCBC 41.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV0038870-910

WEATHERSPOON FAMILY LLC,

Plaintiff,

v.

HATTERAS INVESTMENT
PARTNERS, L.P. and DAVID B.
PERKINS,

Defendants,

and

HATTERAS EVERGREEN PRIVATE
EQUITY FUND, LLC,

Nominal Defendant.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION FOR
VOLUNTARY DISMISSAL,
PLAINTIFF'S ALTERNATIVE
MOTION FOR LEAVE TO FILE FIRST
AMENDED COMPLAINT, AND
DEFENDANTS' AND NOMINAL
DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on (i) Defendants' and Nominal Defendant's Rule 12(b)(1) motion to dismiss, (ECF No. 24), (ii) Plaintiff's notice of voluntary dismissal without prejudice, (ECF No. 49), (iii) Plaintiff's subsequent motion for voluntary dismissal without prejudice, (ECF No. 51), and (iv) Plaintiff's motion for leave to file first amended complaint, (ECF No. 54).

As explained below, the Court **STRIKES** Plaintiff's notice of voluntary dismissal without prejudice, **DENIES** Plaintiff's motion for voluntary dismissal without prejudice, **GRANTS** Plaintiff's motion for leave to file first amended

complaint, and **DENIES as moot** Defendants' and Nominal Defendant's Rule 12(b)(1) motion to dismiss.

> *Malmfeldt Law Group P.C., by Paul D. Malmfeldt; Milberg Coleman Bryson Phillips Grossman, PLLC, by Matthew E. Lee, Eric G. Steber, and Jeremy R. Williams; and Silver Law Group, by Scott L. Silver, for Plaintiff Weatherspoon Family LLC.*
>
> *Parker Poe Adams & Bernstein, LLP, by Melanie Black Dubis, Jack K. Belk, Jr., and Corri A. Hopkins, for Defendants Hatteras Investment Partners, L.P. and David B. Perkins.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Greg Gaught, Gabrielle E. Supak, and Jennifer K. Van Zant, for Nominal Defendant Hatteras Evergreen Private Equity Fund, LLC.*

Houston, Judge.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

1.    This case is a putative derivative action arising from an undisputedly poor business deal. In late 2021, Hatteras Evergreen Private Equity Fund, LLC ("**Evergreen Fund**" or "**Nominal Defendant**"), a private equity growth fund with a previously diversified, $43 million portfolio of alternative assets, agreed to exchange its portfolio for preferred equity shares in The Beneficient Company Group, LLP ("**Ben**"), a startup that is not a party to this action.

2.    That transaction was spearheaded by defendants Hatteras Investment Partners, L.P. ("**HIP**"), the manager of Evergreen Fund, and HIP's own manager, David B. Perkins.

3.    Ultimately, Evergreen Fund's investment in Ben resulted in the loss of most, if not all, of the value of Evergreen Fund's assets.

4.      Plaintiff contends that HIP and Perkins ignored numerous "red flags" in causing Evergreen Fund to transact with Ben, that they consummated the transaction due to personal interests, and that their conduct was otherwise wrongful and harmful to Evergreen Fund. Accordingly, Plaintiff filed this putative derivative action on behalf of Evergreen Fund. Before doing so, Plaintiff never made a demand on HIP, Perkins, or Evergreen Fund to investigate or otherwise assert claims arising from the issues raised by Plaintiff, instead contending that such a demand would be futile and should be excused.

5.      Plaintiff commenced this action in Wake County Superior Court on 4 December 2024, asserting a putative derivative claim on behalf of Evergreen Fund against Defendants for breach of fiduciary duty. (ECF No. 3). The case was designated as a mandatory complex business case and was ultimately assigned to the undersigned Business Court judge. (ECF Nos. 1, 29).

6.      On 14 February 2025, Defendants and Evergreen Fund moved to dismiss the action under Rule 12(b)(1),[1] asserting that "Plaintiff failed to meet the substantive requirements for demonstrating demand futility under Delaware law, and thus lacks standing to sue derivatively." (ECF No. 24 at 1). In short, Defendants and Evergreen Fund contend that Plaintiff has failed to plead facts demonstrating

---

[1] In a putative derivative action, an entity named as a nominal defendant generally may not "defend" itself against claims brought on its behalf. *E.g.*, *Swenson v. Thibaut*, 39 N.C. App. 77, 101 (1978). Here, however, Plaintiff has not contested Evergreen Fund's right or ability to join in the motion to dismiss, and any such dispute is moot inasmuch as the same Rule 12(b)(1) arguments are appropriately raised by Defendants and considered by the Court accordingly.

that a pre-suit demand was excused before filing this putative derivative action. (ECF Nos. 24–25, 32, 37).

7. The Court heard arguments on Defendants' and Evergreen Fund's motion to dismiss and took that motion under advisement on 24 April 2025. (ECF No. 44).

8. On 6 May 2025, without the Court's leave, Plaintiff filed a notice of voluntary dismissal without prejudice, purporting to dismiss this action unilaterally. (ECF No. 49). Thereafter, the Court *sua sponte* entered an Order on Voluntary Dismissal, directing Plaintiff to file and serve an appropriate motion and supporting brief addressing (a) any bases for dismissal under N.C. Gen. Stat. § 57D-8-04 and (b) the limitations on dismissal under Rule 41 as applicable, if at all, to Plaintiff's attempted dismissal. (ECF No. 50).

9. On 9 May 2025, Plaintiff filed an opposed motion for leave to voluntarily dismiss this action without prejudice. (ECF No. 51).

10. On 10 May 2025, Plaintiff filed a motion for leave to file a first amended verified derivative complaint, seeking leave to amend as an alternative to dismissal if the Court otherwise determines that Plaintiff should not be granted leave to dismiss the action. (ECF No. 54).

11. The parties fully briefed the motions on an expedited schedule, and the motions are now ripe for resolution. (ECF Nos. 52–53, 57–59, 60).

## II. BACKGROUND

12. The Court summarizes here only those portions of the alleged facts in Plaintiff's complaint (and the documents relied upon therein) relevant to the Court's

determination of the motions at issue. *Dep't of Transp. v. Blue*, 147 N.C. App. 596, 603 (2001); *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

13.     Nominal Defendant Evergreen Fund is a Delaware limited liability company with a "stated business objective . . . to achieve long-term capital appreciation by investing in a diversified portfolio of private investments." (Compl. ¶¶ 1, 4, 13).

14.     Defendant HIP is, and at all relevant times has been, Evergreen Fund's manager and is a Delaware limited partnership based in North Carolina. (Compl. ¶ 11).

15.     Defendant Perkins is the founder and majority owner of HIP and has also served as its chief executive officer. (Compl. ¶ 12). Plaintiff alleges that Perkins, as majority owner of HIP, has control over HIP and thus over Evergreen Fund via HIP's role as its manager. (Compl. ¶¶ 3, 12).

16.     Plaintiff Weatherspoon Family LLC is a North Carolina limited liability company. Since 2017, Plaintiff has been a member of, and a minority investor in, Evergreen Fund. (Compl. ¶ 10).

17.     Evergreen Fund's operative limited liability company agreement grants HIP the "full and exclusive right, power and authority to manage and conduct the business and affairs of the Fund." (Compl. ¶¶ 16–17). That same LLC agreement provides that the manager of Evergreen Fund (in this case, HIP) generally may not be held liable for breaching its duty of care to Evergreen Fund absent "willful misfeasance, bad faith or gross negligence." (Perkins Decl., Ex. A (the "**LLC Agreement**") § 3.4(a), ECF No. 25.3; *see also* Compl. ¶¶ 2, 16–20 (discussing LLC Agreement in complaint)).

18.    In 2021, Ben was an early stage startup company with a limited operating history. Though Ben advertised its business model as one generating interest and fees by offering liquidity products to holders of alternative assets, Ben's primary business model was ultimately to invest directly in alternative assets. (Compl. ¶¶ 22, 26).

19.    Ben's parent company was GWG Holdings, Inc., a publicly traded company. (Compl. ¶¶ 5, 7, 22, 25–27). On 5 November 2021, GWG disclosed in its annual Form 10-K (for the 2020 reporting year) that the Securities and Exchange Commission was investigating GWG and Ben, with a focus on Ben's accounting practices. (Compl. ¶¶ 22, 25–27). The filing also indicated that Ben was historically unprofitable as an entity, with a declining portfolio over the course of several years. (Compl. ¶¶ 25–27).

20.    Shortly thereafter, on 29 November 2021 and in light of debate regarding GWG's viability as a going concern, Ben was spun off from GWG, and the transaction was publicly announced several days later. (Compl. ¶ 29).

21.    On 7 December 2021, after Ben was spun off from GWG, Evergreen Fund nonetheless exchanged its portfolio of alternative assets for preferred equity interests in Ben. HIP, as manager of Evergreen Fund, effectuated the transaction via Perkins. According to Plaintiff, Evergreen Fund's portfolio was "reported" to be valued at $43 million and "consisted primarily of private equity limited partnerships." (Compl. ¶¶ 4–5, 21, 29).

22.    At approximately the same time, Plaintiff contends that HIP and Ben entered into one or more contracts under which HIP had an "opportunity" to "co-

sponsor new investment funds." Plaintiff asserts that the agreement between HIP and Ben was inherently contingent on Evergreen Fund's completion of the initial asset exchange because "Ben was required to seed these funds with alternative assets that Evergreen Fund and another Hatteras-sponsored fund would contribute to Ben." This arrangement was publicly disclosed in Ben's SEC filings made in 2023. (Compl. ¶¶ 6, 35).

23. In the several years *after* the 7 December 2021 transaction between Evergreen Fund and Ben, GWG (Ben's former parent company) went bankrupt. GWG's founder and several of its officers and directors were sued in connection with the alleged diversion of cash that was purportedly invested by GWG in Ben, and various other allegations have been raised regarding perceived internal wrongdoing between GWG and Ben between 2017 and 2021. (Compl. ¶¶ 30–34).

24. Ultimately, Ben's value dropped precipitously, with its shares falling from approximately $8 per share to approximately $.02 per share by the time this suit was filed. (Compl. ¶ 37).

25. Plaintiff contends that, given these circumstances, there were numerous "red flags" surrounding the initial transaction between Ben and Evergreen Fund and that, by "disregarding Evergreen Fund's investment parameters, by ignoring the red flags surrounding Ben, and by using Evergreen Fund's assets to pursue business opportunities and profits for itself," HIP "acted recklessly and in bad faith and breached its fiduciary duty" to Evergreen Fund. (Compl. ¶ 51).

26. Plaintiff also contends that Defendants breached their purported fiduciary duty to Evergreen Fund by causing Evergreen Fund to enter into the transaction with Ben in an effort to "pursue business opportunities and profits that would not be shared with Evergreen Fund." (Compl. ¶ 50).

27. Thus, Plaintiff filed this putative derivative suit but declined to make a pre-suit demand on HIP or Perkins to investigate or otherwise to assert claims. (Compl. ¶ 9). Plaintiff instead contends that such a demand would have been futile because HIP "received a material benefit" from the transaction and that HIP and Perkins "used Evergreen Fund's assets to pursue business opportunities and profits for themselves," such that they are not sufficiently disinterested or independent for purposes of such a demand. (Compl. ¶ 9).

## III.  ANALYSIS

28. The Court addresses in turn each of the parties' pending motions, along with Plaintiff's notice of voluntary dismissal without prejudice.

### a.  Plaintiff's Notice of Voluntary Dismissal Without Prejudice

29. The Court first addresses Plaintiff's notice of voluntary dismissal without prejudice. (ECF No. 49).

30. Under North Carolina law, "[a] derivative proceeding may not be discontinued or settled without the court's approval." N.C. Gen. Stat. § 57D-8-04; *see*

*also* N.C. Gen. Stat. § 57D-8-06 (requiring application of North Carolina law for dismissal analysis and approval).

31. With its notice of voluntary dismissal without prejudice, Plaintiff purported to "provide[] notice of voluntary dismissal without prejudice as to all Defendants and Nominal Defendant" pursuant to Rule 41(a) of the North Carolina Rules of Civil Procedure. (ECF No. 49 at 1).

32. Plaintiff was not authorized to dismiss this action unilaterally under Rule 41(a), and Plaintiff's notice of voluntary dismissal was therefore ineffective. N.C. Gen. Stat. § 57D-8-04.

33. The Court has inherent authority to strike an ineffective or impermissible filing. *State v. Bellar*, 16 N.C. App. 339, 343 (1972) ("[A] court has inherent power to keep its files free from scandalous matter, or to strike such matter from the record." (citation omitted)); *see Beard v. N.C. State Bar*, 320 N.C. 126, 129 (1987) ("Through its inherent power the court has authority to do all things that are reasonably necessary for the proper administration of justice."); *Window World of Baton Rouge v. Window World*, 2022 NCBC LEXIS 58, at *4 (N.C. Super. Ct. June 13, 2022) (addressing inherent authority).

34. Accordingly, the Court determines that it is appropriate to **STRIKE** the purported notice of voluntary dismissal from the record as ineffective.

### b. **Plaintiff's Motion for Voluntary Dismissal Without Prejudice**

35. The Court next addresses Plaintiff's motion for voluntary dismissal without prejudice. With its motion, Plaintiff contends that dismissal without prejudice is in

the best interests of Evergreen Fund because Plaintiff's counsel intends to pursue the litigation through the Delaware courts with other plaintiffs-investors of Evergreen Fund so that "subject matter jurisdiction [is] not reasonably subject to challenge," as compared to the challenge before this Court. (ECF No. 52 at 4).

36. Defendants and Evergreen Fund, however, oppose the motion and contend that Plaintiff has failed to adequately and particularly plead facts showing that its claim for breach of fiduciary duty is viable or that dismissal is otherwise in Evergreen Fund's best interests. They also argue that Plaintiff has forfeited the right to take a voluntary dismissal under Rule 41(a) because (i) Plaintiff rested its case at the motion-to-dismiss stage and (ii) Plaintiff is seeking dismissal in bad faith. Thus, Defendants and Evergreen Fund request that the Court dismiss the action *with* prejudice. (*See generally* ECF No. 58; *see also* ECF No. 25).

37. As detailed above, while plaintiffs generally have the ability under Rule 41 to take a unilateral dismissal of their claims prior to resting their case, they may not do so in the context of a derivative action and instead must obtain the Court's leave to dismiss the action. N.C. Gen. Stat. § 57D-8-04; N.C. R. Civ. P. 41(a)(1).

38. When evaluating a requested voluntary dismissal of a derivative action, courts apply a balancing test, weighing "(1) any legitimate corporate [or LLC] claims as brought forward in the derivative shareholder suit against (2) the corporation's [or LLC's] best interests." *Alford v. Shaw*, 327 N.C. 526, 540 (1990); *White v. Hyde*, 2017 NCBC LEXIS 202, at *2 (N.C. Super. Ct. May 23, 2017) (applying *Alford*'s derivative balancing framework to LLCs). Courts may consider factors including litigation costs,

any benefits that the LLC would derive by continuing the suit, and any "ethical, commercial, promotional, public relations and fiscal factors" that might be involved. *Alford*, 327 N.C. at 540 (citation omitted).

      i.   Legitimacy of Plaintiff's Claim

39. The Court first evaluates the legitimacy of Plaintiff's lone claim for breach of fiduciary duty. *Alford*, 327 N.C. at 540; *see generally also Cone v. Blue Gem, Inc.*, 2023 NCBC LEXIS 127 (N.C. Super. Ct. Oct. 13, 2023).

40. As Evergreen Fund is a Delaware limited liability company, the substance of Plaintiff's claim is governed by Delaware law. N.C. Gen. Stat. § 57D-8-06 ("In any derivative proceeding in the right of a foreign LLC, the matters covered by this Article will be governed by the law of the jurisdiction of the foreign LLC's organization" with limited exceptions.); *Egelhof v. Szulik*, 2006 NCBC LEXIS 5, at *17 (Mar. 13, 2006); *see also Banyan Mezzanine Fund II, LP v. Rowe*, 2016 NCBC LEXIS 38, at *8–9 (N.C. Super. Ct. May 10, 2016).

41. Under Delaware law, before filing a derivative action, a shareholder or member generally must make a demand on the entity's board of directors, manager, or comparable managerial authority to investigate or to take other action concerning the entity's claims. *E.g.*, *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1047–48 (Del. 2021).

42. The "demand requirement is a substantive requirement" in derivative actions governed by Delaware law. *Id.* at 1047.

43. Thus, absent a pre-suit demand, the shareholder or member "must plead facts *with particularity* that demonstrate the reasons why demand would have been futile" such that the failure to make a demand should be excused. *Egelhof*, 2006 NCBC LEXIS 5, at *18–19 (emphasis in original); *see also* Del. Ch. Ct. R. 23.1 (Delaware rule governing requirements for derivative actions); *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).

44. If the plaintiff fails to do so, "the complaint must be dismissed, regardless of the strength of his claim on the merits." *Egelhof*, 2006 NCBC LEXIS 5, at *18–19 (noting also that "[p]leadings in derivative suits . . . must comply with stringent requirements of factual particularity that differ substantially from . . . permissive notice pleading" (alterations in original) (citation omitted)).

45. Delaware law requires courts to consider three factors to determine whether a plaintiff has made adequate factual allegations of demand futility:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

*Zuckerberg*, 262 A.3d at 1059.

46. The latter factor requires a plaintiff to plead particularized facts justifying a "reasonable doubt" that the individual to whom demand would be made lacks independence. *Id.* at 1061. "[T]he reasonable doubt standard used in a demand futility analysis provides a higher hurdle for a plaintiff than the relatively lenient standard of review pursuant to Rule 12(b)(6)." *In re Trade Desk, Inc. Derivative Litig.*, 2025 Del. Ch. LEXIS 40, at *34 n.120 (Del. Ch. Feb. 14, 2025) (unpublished) (citation omitted).

47. Ultimately, an affirmative answer to any of the three factors as to at least half of the relevant decisionmakers permits demand to be excused as futile. *Zuckerberg*, 262 A.3d at 1059.

48. Here, Plaintiff admits that it did not make a demand of HIP (as manager of Evergreen Fund) or Perkins (as manager of HIP), nor did Plaintiff make any other pre-suit demand concerning its breach of fiduciary duty claim asserted in this action. (Compl. ¶¶ 9, 45). Defendant and Evergreen Fund contend that Plaintiff has failed to adequately plead that its pre-suit demand obligation was excused. (ECF No. 58 at 5–7).

## 1. Material Personal Benefit to Defendants

49. The Court first considers whether Plaintiff has adequately and particularly pleaded facts suggesting that HIP (or Perkins) received a "material personal benefit" from the transaction between Ben and Evergreen Fund. *Zuckerberg*, 262 A.3d at 1059.

50. Plaintiff contends that Defendants both received a material personal benefit because (i) Ben "had offered [HIP] an opportunity to co-sponsor new investment funds" that would be funded from the assets of Evergreen Fund and another Hatteras-sponsored fund, (ECF No. 32 at 17), and (ii) HIP presumably "would receive fees by sponsoring, managing, and/or advising the new Hatteras funds." (Compl. ¶ 35). In effect, Plaintiff challenges the Ben-Evergreen Fund transaction on the basis that Defendants were allegedly "motivated to use Evergreen Fund's assets in the Ben Transaction to pursue business opportunities with Ben." (ECF No. 32 at 16 n.10).

51. As Plaintiff acknowledges, however, this argument is based not on factual allegations in the complaint or evidence reflecting a payment arrangement between Ben and HIP or Perkins but instead on Plaintiff's conclusory assumption that HIP necessarily must be benefiting from the transaction. (ECF No. 32 at 18 (asserting that the Court should "*assume* that if HIP is given access to a special opportunity of 'sponsoring, managing and/or advising the new Hatteras funds,' and if this opportunity is memorialized in 'agreements entered at the time of the Ben Transaction' . . . then HIP, and by extension Perkins, will benefit in the form of fees for those services" (emphasis added)).[2]

---

[2] Though Plaintiff repeatedly seeks to have the Court draw "reasonable inferences" in its favor as required under Delaware law, *Chester Cnty. Emps.' Ret. Fund v. New Residential Inv. Corp.*, 2017 Del. Ch. LEXIS 767, at *14 (Del. Ch. Oct. 6, 2017) (unpublished), reasonable inferences are not the same as unwarranted assumptions. *Compare* Inference, Black's Law Dictionary (12th ed. 2024) ("A conclusion reached by considering other facts and *deducing a logical consequence from them*." (emphasis added)), *with* Assumption, Black's Law Dictionary (12th ed. 2024) ("A fact or statement taken as true or correct without definite proof; a supposition."), *and* Supposition, Black's Law Dictionary (12th ed. 2024) ("An assumption that something is true, without proof of its veracity; the act of supposing.").

52.    The Court concludes that neither this assumption nor any other factual allegation in Plaintiff's complaint meets the standard of plausibly alleging with particularity that Defendants received a specific material personal benefit from the original Ben transaction or otherwise that there was a benefit sufficient to create a reasonable doubt as to HIP's (or Perkins's) independence. *See, e.g., City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 56 (Del. 2017) (citation omitted) (declining to excuse demand).

53.    Similarly, even if there were a benefit to Defendants, the Court concludes that Plaintiff has failed to adequately and particularly allege facts demonstrating that the alleged benefit was "material."

54.    Plaintiff concedes that the materiality of the alleged benefit to HIP and Perkins is premised on "the sheer size of the funds and assets involved" in the overall transaction—the specific details of which are only broadly and conclusorily alleged in the complaint. (ECF No. 32 at 18–19; *see generally* Compl.).

55.    "[T]here is no bright-line dollar amount at which" amounts received by a manager "become material" for purposes of excusing the demand requirement in a derivative action. *Orman v. Cullman*, 794 A.2d 5, 30 (Del. Ch. 2002); (*see also* ECF No. 32 at 18–19). For precisely this reason, the size of the transaction alone does not render an alleged benefit "material" to the recipient; instead, the plaintiff must make a particularized showing of how and why the benefit is allegedly material. *See Horman v. Abney*, 2017 Del. Ch. LEXIS 13, at *39 (Del. Ch. Jan. 19, 2017) (unpublished) (holding that alleged wrongdoing and futility of demand could not be

reasonably inferred "based solely upon the size or duration of the alleged wrongdoing"); *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 Del. Ch. LEXIS 151, at \*36–37 (Del. Ch. Oct. 12, 2011) (unpublished) (concluding that $670 million size of transaction was insufficient to excuse pre-suit demand requirement, particularly when coupled with conclusory allegations).

56. Though the transaction here involved a $43 million investment by Evergreen Fund into Ben, (Compl.¶¶ 4–5, 21), Plaintiff's complaint fails to quantify the alleged benefit to Defendants from the Ben transaction, and Plaintiff instead asserts in briefing that the "specific dollar value of this opportunity is a matter for discovery." (ECF No. 32 at 19; *see generally* Compl.).

57. Given the need for particularized pleading, such details are not "matter[s] for discovery." Rather, the complaint fails to adequately and particularly plead facts reflecting a material personal benefit, and the Court need not, and does not, address whether Plaintiff has adequately demonstrated that Defendants "received" the alleged benefit.

58. Plaintiff's obligation to make a pre-suit demand is therefore not excused on the basis of the first prong of the *Zuckerberg* test.

### 2. "Substantial Likelihood" of Liability

59. The Court next considers whether Plaintiff has adequately shown that Defendants face a substantial likelihood of liability with respect to Plaintiff's breach of fiduciary duty claim—Plaintiff's lone claim in this case. (*See generally* Compl.).

60. The Court concludes that Plaintiff has failed to do so and that, consequently, a showing of substantial likelihood of liability does not serve as a hook on which to excuse Plaintiff's failure to make a pre-suit demand.

61. Delaware law has robust protections for corporate managers. *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 360 (Del. 1993). Paramount among those protections is the business judgment rule, which presumes that corporate directors and managers are discharging their duties "in good faith and with reasonable care, even if their actions turn out poorly in hindsight." *In re TransUnion Derivative S'holder Litig.*, 324 A.3d 869, 884 (Del. 2024).

62. To overcome the "extremely stringent" defendant-friendly business judgment presumption and show a substantial likelihood of liability, a plaintiff must demonstrate that the directors or managers acted with at least gross negligence. *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 651–52 (Del. Ch. 2008); *see also Tomczak v. Morton Thiokol, Inc.*, 1990 Del. Ch. LEXIS 47, at \*35 (Del. Ch. Apr. 5, 1990) ("In the corporate context, gross negligence means 'reckless indifference to or a deliberate disregard of the whole body of stockholders' or actions which are 'without the bounds of reason.'" (citations omitted)).

63. Moreover, where an LLC agreement limits the manager's liability—as is the case here—the plaintiff must demonstrate that the claims are not excluded by the terms of the LLC agreement. *In re Cornerstone Therapeutics Inc. S'holder Litig.*, 115 A.3d 1173, 1186–87 (Del. 2015); (*see* LLC Agreement § 3.4(a) (excluding claims

against HIP for breach of the duty of care absent a judicial determination of "willful misfeasance, bad faith or gross negligence")).

64. Here, Defendants' actions undoubtedly "turn[ed] out poorly in hindsight." *In re TransUnion Derivative S'holder Litig.*, 324 A.3d at 884. The "red flags" on which Plaintiff relies to support its claim for breach of fiduciary duty, however, are primarily that Defendants caused Evergreen Fund to invest in Ben despite (i) a disclosure in another entity's Form 10-K filing about an investigation into Ben's accounting practices, (ii) Evergreen Fund's stated business objective of investing in a "diversified portfolio of private investments," particularly "alternative" assets, (iii) Defendants' vaguely described alleged agreements to co-sponsor or co-manage new funds with Ben, and (iv) numerous events that occurred after the Ben-Evergreen Fund transaction, such as the bankruptcy of GWG. (*See* Compl. ¶¶ 4, 8, 13, 22, 30–39, 51).

65. Plaintiff's largely conclusory allegations fail to demonstrate willful misfeasance or bad faith, as relevant to the LLC Agreement, or gross negligence, as relevant under both the business judgment rule and the LLC Agreement. *See, e.g.*, *In re Molycorp, Inc. S'holder Derivative Litig.*, 2015 Del. Ch. LEXIS 152, at *28–29, 38 (Del. Ch. May 27, 2015) (unpublished) (addressing allegations concerning hindsight); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 194 (Del. Ch. 2006) (addressing gross negligence).

66. While Defendants' conduct, as alleged, might create questions as to HIP's ultimate competence as manager and suggest a possibility or a "threat" of liability, the alleged conduct—combined with the language of the LLC Agreement—does not

give rise to a reasonable inference that Defendants face a "substantial likelihood" of liability from Plaintiff's claims. *Wood v. Baum*, 953 A.2d 136, 141 n.11 (Del. 2008) (noting that the "mere threat of personal liability . . . is insufficient to challenge either the independence or disinterestedness of directors" (quoting *Aronson v. Lewis*, 473 A.2d 805, 814, *overruled in part on other grounds by Brehm*, 746 A.2d at 254)); *Melbourne Mun. Firefighters' Pension Tr. Fund ex rel. Qualcomm, Inc. v. Jacobs*, 2016 Del. Ch. LEXIS 114, at *37–39 (Del. Ch. Aug. 1, 2016) (unpublished) (determining that plaintiff's failure to plead particularized facts permitting a reasonable inference that directors faced a substantial likelihood of liability warranted dismissal), *aff'd*, 158 A.3d 449 (Del. 2017).

67.    Plaintiff's obligation to make a pre-suit demand is therefore not excused on the basis of this second prong of the *Zuckerberg* test.

### 3. Lack of Independence from Others Receiving a Material Personal Benefit or Facing a Substantial Likelihood of Liability

68.    As the final prong of the *Zuckerberg* test, the Court would ordinarily address whether Plaintiff has shown that Defendants lack independence from others receiving a material personal benefit or facing a substantial likelihood of liability from the transaction at issue. *Zuckerberg*, 262 A.3d at 1059.

69.    In this case, however, Plaintiff clarifies in its briefing that it does not contend that Defendants lack independence from someone else who received a material personal benefit or who would allegedly face a substantial likelihood of liability from Plaintiff's claims. (ECF No. 32 at 14 n.9).

70.     With Plaintiff's concession, and with the Court's foregoing determinations, the Court concludes that, even if Defendants lacked independence from each other or others, there has been no showing that Defendants lack independence from someone receiving a "material personal benefit" or facing a "substantial likelihood of liability" on Plaintiff's claims, such that this prong does not provide a viable basis on which Plaintiff may claim that its obligation to make a pre-suit demand was excused.

71.     Ultimately then, considering each of the three factors or prongs of the *Zuckerberg* test, the Court concludes that Plaintiff's complaint fails to plead with the requisite particularity the facts necessary to establish that its pre-suit demand obligation was or should be excused.

72.     Because Plaintiff has failed to make such particularized allegations, Plaintiff has also failed to allege a viable or legitimate claim. *See Alford*, 327 N.C. at 540 (addressing considerations for dismissal of derivative actions under § 57D-8-04); *Zuckerberg*, 262 A.3d at 1059 (articulating tests for demand futility pleading in derivative actions under Delaware law).

ii.   Best Interests of Evergreen Fund

73.     Having determined that Plaintiff has failed to adequately and particularly plead a legitimate claim, the Court nonetheless evaluates whether voluntary dismissal without prejudice, as requested by Plaintiff, would be in Evergreen Fund's best interests, whether to permit Plaintiff to articulate other allegations or otherwise. *Alford*, 327 N.C. at 540. Ultimately, the Court determines that it would not.

74. As noted above, Plaintiff suggests that dismissal without prejudice is in Evergreen Fund's best interests because Plaintiff's counsel intends to pursue these same derivative claims in Delaware with another plaintiff in an effort to avoid the substantive arguments that Defendants and Evergreen Fund have made before this Court concerning subject matter jurisdiction and the deficiencies of Plaintiff's complaint. (ECF No. 52 at 4).

75. Defendants and Evergreen Fund, on the other hand, contend that the case should be dismissed with prejudice given the deficiencies in Plaintiff's complaint and in light of Plaintiff's questionable litigation tactics. (*See generally* ECF No. 58; *see also* ECF No. 25).

76. It appears to the Court that permitting Plaintiff to dismiss this action without prejudice—and therefore to pursue the same claim in another case, whether in North Carolina or Delaware—would unnecessarily and inevitably involve the expenditure of additional time and other resources, including financial and judicial resources, solely for the purpose of permitting Plaintiff to pursue a claim that, as currently pleaded, is deficient.[3]

77. The record does not support Plaintiff's request for leave to voluntarily dismiss this action without prejudice. *See Alford*, 327 N.C. at 540.

78. Considering the various factors contemplated under *Alford*, the Court determines that it would not be in Evergreen Fund's best interests to permit voluntary

---

[3] While Plaintiffs' motion to amend, as addressed and ultimately granted below, inherently implicates many of the same issues of cost and efficiency, that motion is made in the alternative to the motion to dismiss, and the Court therefore considers the motion for leave to voluntarily dismiss the action on its merits standing alone.

dismissal without prejudice, with the possibility of permitting Plaintiff to re-file its claim in another proceeding outside of this Court's jurisdiction and oversight. Plaintiff has failed to particularly plead facts demonstrating that it possesses a legitimate and viable derivative claim under Delaware law, and the Court need not facilitate Plaintiff's counsel's expressed intention of pursuing further litigation on the same claim with the same underlying allegations at the expense of Evergreen Fund's resources as a nominal defendant.

79. Accordingly, having considered all appropriate matters of record, the Court in its discretion **DENIES** Plaintiff's motion for leave to voluntarily dismiss this action without prejudice under N.C. Gen. Stat. § 57D-8-04 and Rule 41 of the North Carolina Rules of Civil Procedure.

### b. <u>Plaintiff's Alternative Motion for Leave to File First Amended Complaint</u>

80. The Court next addresses Plaintiff's request, made in the alternative to its motion for leave to voluntarily dismiss the case without prejudice, to file a first amended verified derivative complaint. (ECF Nos. 54, 55, 55.1).

81. In its proposed amended complaint, Plaintiff seeks to add allegations concerning, among other things, the nature of the alleged contractual arrangement between Ben and HIP that purportedly influenced HIP's decision-making in connection with the transaction at issue in this derivative action, including the financial scope of the arrangement (i.e., managing funds of over $400 million), as well as allegations concerning alleged misstatements by Perkins. (*See, e.g.*, ECF No. 55.1, ¶¶ 9–10, 46, 52; *see generally* ECF No. 55).

82.     Under Rule 15(a) of the North Carolina Rules of Civil Procedure, in relevant part, "[a] party may amend his pleading once *as a matter of course* at any time before a responsive pleading is served." N.C. R. Civ. P. 15(a) (emphasis added).

83.     If a defendant wishes to preclude a plaintiff's ability to amend as of right, following the filing of any appropriate motions to dismiss or other motions, the defendant may file a responsive pleading, such as an answer. *See Coffey v. Coffey*, 94 N.C. App. 717, 722 (1989) ("Under Rule 15(a), *as the defendant had filed an answer*, the plaintiff was allowed to amend her pleadings 'only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'" (emphasis added) (quoting N.C. R. Civ. P. 15(a))); *see also* N.C. R. Civ. P. 12 (addressing motions and responsive pleadings); N.C. R. Civ. P. 7(a) (setting forth a list of pleadings).

84.     However, "threshold motions under Rule 12 and dispositive motions under other rules are not responsive pleadings that prevent an amendment without leave of court under Rule 15(a)." *Pierce v. Johnson*, 154 N.C. App. 34, 37 (2002) (citations omitted).

85.     As a result, absent a responsive pleading, the plaintiff is entitled as a matter of right to file an amended complaint once, and courts therefore should grant motions for leave to amend in such circumstances. *See, e.g.*, *id.* (despite "defendant's motions to dismiss under Rules 12(b), 17, and 19" and "the offers of judgment, interrogatories, request for production of documents, and request for monetary relief sought," no responsive pleading had been filed, and the trial court therefore erred in denying

plaintiff's motion to amend); *Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 258 (2003) (determining that trial court erred in denying motion to amend as futile and noting that "because defendants had yet to file a responsive pleading and the trial court had yet to rule on defendant's Rule 12 motion when plaintiff made the motion to amend, it would appear that plaintiff was entitled to amend the complaint as a matter of right" (citation omitted)); *Hardin v. York Mem'l Park*, 221 N.C. App. 317, 320–21 (2012) (reasoning that trial court erred in dismissing action where plaintiff filed amended complaint as of right, and no motion to dismiss or responsive pleading was filed with respect to the amended complaint prior to entry of the court's order); *see also Krawiec v. Manly*, 2015 NCBC LEXIS 85, at \*5–6 (N.C. Super. Ct. Aug. 24, 2015) (noting that motion to amend was "unnecessary" where no responsive pleading had been filed and deeming proposed amended complaint filed as of entry of the court's order and opinion).

86. As set forth above, this action was filed on 4 December 2024, (ECF No. 3), and Defendants and Evergreen Fund filed their motion to dismiss on 14 February 2025, (ECF No. 24).

87. Plaintiff waited until 9 May 2025 to file its motion for leave to take a voluntary dismissal and until 10 May 2025 to file its alternative motion for leave to amend the complaint—several weeks after the Court's hearing on the motion to dismiss. (ECF Nos. 44, 51, 54).

88. Though they were permitted and able to do so, however, neither Defendants nor Evergreen Fund at any time filed an answer or other responsive pleading to the original complaint.

89. Because no responsive pleading has been filed within the meaning of Rule 15(a), Plaintiff retains the right to amend its original complaint once as a matter of course, regardless of Defendants' or Evergreen Fund's views on the merits of the amendment, and Plaintiff's motion therefore should be granted.[4]

90. Consequently, Plaintiff's proposed first amended verified derivative complaint, (ECF No. 55.1), which has already been signed, dated, and verified, will be deemed filed and served for all purposes effective as of the date of entry of this Order and Opinion, and all deadlines for responding to the amended complaint will be as provided under the North Carolina Rules of Civil Procedure and Business Court Rules.

91. The amendment is, of course, without prejudice to the ability of any party to file an appropriate motion to dismiss, responsive pleading, or other documents in

---

[4] As noted above, Plaintiff first attempted to take a voluntary dismissal of the case without the Court's leave, despite the requirements of N.C. Gen. Stat. § 57D-8-04 and, even then, waited until several weeks *after* the hearing on Defendants' and Evergreen Fund's motion to dismiss to attempt the dismissal, which Plaintiff concedes is sought for purely strategic reasons. While the Court is compelled to permit the amendment as of right, counsel are cautioned that the Court will not tolerate ongoing gamesmanship in this action. The Court may, in its discretion, require Plaintiff and its counsel to show cause why these filings, even if otherwise procedurally permitted under the Rules of Civil Procedure, were not made for an improper purpose within the scope of Rule 11 and why the Court should not sanction Plaintiff's counsel. *See generally, e.g.*, *Moch v. A. M. Pappas & Assocs., LLC*, No. COA17-1126, 260 N.C. App. 355, 2018 N.C. App. LEXIS 670 (July 3, 2018) (unpublished) (affirming sanctions under Rule 11 for filings made for an improper purpose); *Ward v. Jett Props., LLC*, 191 N.C. App. 605, 609 (2008) ("Defined as any purpose other than one to vindicate rights or to put claims to a proper test, 'an improper purpose may be inferred from the alleged offender's objective behavior.'" (citation omitted)).

response to the amended complaint, and the Court at this time makes no determination as to the merits of any such potential motions or responsive pleadings.

### c. **Defendants' and Evergreen Fund's Motion to Dismiss**

92.    Generally, an amended complaint moots a pending motion to dismiss under Rule 12. *Houston v. Tillman*, 234 N.C. App. 691, 695 (2014) ("[P]laintiff's amendment and restatement of the complaint has rendered any argument regarding the original complaint moot." (citations omitted)); *Krawiec*, 2015 NCBC LEXIS 85, at *5–6.

93.    Certain exceptions to this rule exist, such as when the parties argue the merits of the amended complaint or when the amended complaint does not change the underlying facts or arguments. *E.g.*, *Stamatakos v. Carolina Urology Partners, PLLC*, 2024 NCBC LEXIS 28, at *24–25 (N.C. Super. Ct. Feb. 20, 2024) (ruling on original partial motion to dismiss after amendment where the amended complaint did not add new factual or other allegations concerning Chapter 75 claim that was the subject of the partial motion to dismiss); *Gateway Mgmt. Servs., Ltd. v. Carrbridge Berkshire Grp., Inc.*, 2018 NCBC LEXIS 45, at *8 (N.C. Super. Ct. May 9, 2018) ("Although an amended pleading would ordinarily moot a pending motion to dismiss, the Court will consider Defendants' Motions to Dismiss as to the Amended Complaint because Defendants and Plaintiff both addressed the sufficiency of the Amended Complaint in their respective briefs and at the hearing.").

94.    Here, the new allegations in Plaintiff's proposed amended complaint go to the heart of the deficiencies identified by Defendants and Evergreen Fund in their motion to dismiss. The new factual allegations, while substantially related to the

arguments raised by the parties in their briefing and in the hearing before the Court, were nonetheless not argued before or otherwise presented to the Court in substance.

95. The Court therefore concludes that the effectuation of Plaintiff's first amended verified derivative complaint, (ECF No. 55.1), renders moot Defendants' and Evergreen Fund's Rule 12(b)(1) motion to dismiss the original complaint. *Houston*, 234 N.C. App. at 695; *Krawiec*, 2015 NCBC LEXIS 85, at \*5–6.

96. Accordingly, the Court further concludes that Defendants' and Evergreen Fund's motion to dismiss, (ECF No. 24), should be denied as moot, without prejudice to any party's right to move to dismiss or otherwise respond to the first amended verified derivative complaint as appropriate under applicable law.

## IV.   CONCLUSION

97. Therefore, in the exercise of its discretion, the Court:

a. **STRIKES** from the record Plaintiff's notice of voluntary dismissal without prejudice, (ECF No. 49);

b. **DENIES** Plaintiff's motion for voluntary dismissal without prejudice, (ECF No. 51);

c. **GRANTS** Plaintiff's motion for leave to file first amended complaint, (ECF No. 54);

d. **DEEMS** Plaintiff's first amended verified derivative complaint, (ECF No. 55.1), filed and served as of the date of entry of this Order and Opinion;

e. **DENIES** as moot Defendants' and Nominal Defendant's joint motion to dismiss under Rule 12(b)(1), (ECF No. 24), without prejudice to any party's right to

respond to Plaintiff's first amended verified derivative complaint as appropriate under applicable law; and

f. **DIRECTS** Defendants and Evergreen Fund to answer or otherwise move in response to Plaintiff's first amended verified derivative complaint as provided under applicable rules.

**SO ORDERED**, this 31st day of July 2025.

/s/ Matthew T. Houston

Matthew T. Houston
Special Superior Court Judge
 for Complex Business Cases